732 So.2d 569 (1999)
STATE of Louisiana
v.
Toriano L. JORDON.
No. 98-KA-823.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1999.
Martin E. Regan, Jr., New Orleans, LA, Attorney for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Terry M. Boudreaux, Appellate Counsel, Frank Brindisi, Vincent Paciera, Jr., Trial Counsel, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA, and THOMAS F. DALEY.
DALEY, Judge.
Defendant Toriano L. Jordon[1] appeals his conviction by a jury of possession of cocaine with intent to distribute, a violation of LSA-R.S. 40:967(A). On appeal, he assigns the following errors: 1) that his trial counsel was ineffective per se because he was ineligible to practice law; 2) that his trial counsel was ineffective for other reasons described below; 3) that the evidence *570 was insufficient to find him guilty as charged; and 4) that errors exist in the multiple offender proceeding. After due consideration, we find that the issue of ineffective assistance of counsel is better addressed on post conviction relief, that the evidence was sufficient to convict the defendant, and that no errors occurred in the multiple offender proceeding. We also note that the trial court failed to inform the defendant of the prescriptive period for applying for post conviction relief. Hence, we affirm the defendant's conviction and sentence, and remand for the trial court to inform defendant of the prescriptive period for applying for post conviction relief.

FACTS
At approximately 1:30 p.m. on July 18, 1997, Officer Crossen, employed with the Jefferson Parish Sheriff's Office, received an anonymous telephone call that a large quantity of cocaine would be transported from the Claiborne Gardens area to Algiers by the elevated Westbank Expressway. The caller gave information about the make, color, year, and license plate of the vehicle, and told Officer Crossen that the vehicle would be occupied by two black males. Officer Blankenship was present at the sheriff's office when Officer Crossen received the anonymous call.
At approximately 2:00 p.m., Officers Blankenship and Crossen began surveillance of the Claiborne Gardens area. At 2:25 p.m., they saw a vehicle matching the description given by the anonymous caller. The officers followed the vehicle in two unmarked police units as it traveled east on the Westbank Expressway. After Officer Crossen verified the information provided by the anonymous caller, Officer Blankenship pulled into the lane beside driver's side of the suspects' car. Since Officer Blankenship was driving a pickup truck, he testified that he was able to look down into the interior of the suspects' car and see the lap of the passenger. He identified the defendant in court as the passenger. Officer Blankenship testified that although he could not remember whether the window of the suspects' vehicle was open or shut, he saw the defendant holding a clear plastic bag containing a white substance.
After notifying Officer Crossen of what he had seen, the officers stopped the suspects' vehicle and ordered them out of the car. Initially, only the driver, Kendrick Chisolm, obeyed. The defendant did not exit the car. The officers observed him leaning over towards the floor of the passenger side front seat, but could not see what he was doing inside the car. After Chisolm showed Officer Crossen his driver's license, the officers ordered him to return to his vehicle to get proof of insurance. The officers again ordered the defendant to exit the car. Chisolm walked back to the car to obtain proof of insurance, and Officer Blankenship heard him tell the defendant to get out of the car. The defendant then complied. Meanwhile, one of the officers ran an NCIC check on the two men, which revealed two outstanding warrants for the defendant.
After Jordon and Chisolm exited the car, Officer Blankenship walked to the passenger side of the car, where he saw two clear plastic bags of a white substance on the passenger floorboard. The defendant and Chisolm were arrested and advised of their rights. After backup officers arrived, Officers Blankenship and Crossen opened the car's glove compartment. More clear bags containing a white substance fell to the floorboard. Officer Crossen performed a field test on the white substance in one of the plastic bags, which tested positive for cocaine.
Officer Blankenship identified State Exhibit Number One as the nineteen (19) clear plastic bags containing cocaine that were seized from the suspects' car. He identified State Exhibit Number 5 as a photograph of the cocaine, which was concealed just behind the glove compartment.
Following his arrest, the defendant gave a statement to Officer Crossen. According *571 to Officer Crossen, the defendant told him that his cousin was the driver of the vehicle, and that the defendant wanted to claim ownership of the cocaine because he did not want his cousin to get in trouble. Officer Crossen again advised the defendant of his rights, and the defendant signed a waiver of his rights. Officer Crossen denied that he promised the defendant anything in return for his statement. Thereafter, the defendant gave a taped statement wherein he admitted that the cocaine was his, that he had intended to distribute it, and that he had obtained it from a Mr. Anthony Vicks. The audiotape was played for the jury.
After the defendant gave Officer Crossen the statement, Officer Blankenship told the defendant that if he cooperated with the police by providing information on other suspects, the police officers would talk with the district attorney's office about getting the defendant a better deal. According to Officers Crossen and Blankenship, the defendant attempted to beep Mr. Vicks, but Mr. Vicks did not respond.
Mr. Edgar Dunn, employed in the Jefferson Parish Sheriff's Office Crime Laboratory, testified that he tested samples of the 123.19 grams of white substance contained in State Exhibit Number One, and that they tested positive for cocaine. He also noted that no fingerprints were found on any of the plastic bags containing the cocaine. Officer Joe Williams was accepted as an expert in the customs and usages of narcotics and narcotics purchases. He testified that the packaging of the cocaine was consistent with the packaging used by a street dealer or distributor.
Kendrick Chisolm testified on behalf of the defendant. He admitted that he had possessed the cocaine that was found in the car on July 18, 1997. Chisolm explained that he got it from a friend and that he was planning to sell it and then pay his friend. He testified that he had hidden the cocaine behind the glove compartment. Chisolm said that he then picked up the defendant to go to the barbershop, and that the defendant did not know that the cocaine was in the car. Chisolm claimed that the officers brought a dog to sniff the inside of the car. Chisolm also claimed that the glove compartment was broken and had to be kept locked or it fell open, and that, because the defendant did not have a key, he could not have opened the glove compartment.[2] He also explained that the side back windows and the back window of the car he was driving were tinted.
Mr. Chisolm admitted that he had sold and bought drugs in the past on a couple of occasions, and he testified that the defendant knew that he had done so in the past. He also admitted that he had been charged with possession of cocaine with intent to distribute, that he pled guilty to these charges two days before the defendant's trial began, and that he had been placed on probation because it was his first conviction.
The defendant testified on his own behalf. He explained that he told the police that the cocaine was his, because he knew that Chisolm had never been to jail before. The defendant claimed that the officers told him that they would make sure he did not "do any time in jail" if he would give them a statement. The defendant testified that no one named "Anthony Vicks" existed, and he admitted that he had not told the truth when he gave his statement to the police. He admitted that he had a prior conviction for possession of crack cocaine and marijuana in 1994. Although the defendant admitted that he knew Chisolm had sold drugs in the past, he claimed that he was not aware that the cocaine was in the car, and he denied ever touching the bags of cocaine. He testified that the police officers were lying about seeing him with a bag of cocaine in his hand while he was riding in the car with Chisolm.

*572 ASSIGNMENT OF ERROR NUMBER ONE

The court, it is respectfully urged, abused its discretion in denying a new trial based on newly discovered evidence that appellant's defense counsel was ineligible to practice law since 1995.
The defendant claims that the trial court erred in failing to grant his motion for new trial because his trial attorney was ineffective as a matter of law. He argues that "newly discovered evidence surfaced that appellant's defense counsel, Adam Samuel Cohen, had been ineligible to practice law since 1995, a fact that would have prevented appellant from retaining Cohen had he known." In his appeal brief, the defendant states that "[a]t the sentencing hearing on March 11, 1998, Cohen was two weeks away from the decision suspending him from the practice of law."
LSA-C.Cr.P. art. 851 provides grounds upon which a motion for new trial may be based, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
In the present case, the defendant's appellate attorney filed a Motion for New Trial on March 11, 1998, which was timely. The motion merely stated that he should be granted a new trial because "[d]efendant, Toriano Jordan, proceeded to trial with a non-licensed attorney, said attorney being without a license since 1996."
The record does not demonstrate that the defendant's trial attorney was ineligible to practice law at the time of the defendant's trial on November 21, 1997. The defendant never presented any evidence demonstrating that his trial attorney was ineligible to practice law at the time of his trial. Although the state's brief to this Court includes an exhibit relating to the status of Mr. Cohen's license, this information was never made a part of the appellate record.
As the defendant notes, in In re Cohen, 98-0291, 98-0292 (La.3/27/98), 708 So.2d 415, the defendant's trial attorney was suspended from the practice of law. However, this decision was rendered on March 27, 1998, after the defendant's trial on November 21, 1997.
The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. McCorkle, 97-966, p. 12 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1218. Therefore, the trial judge did not err in denying the defendant's motion for new trial.[3]

ASSIGNMENT OF ERROR NUMBER TWO
The appellant respectfully urges this honorable court that his trial counsel was so ineffective that he was denied representation as guaranteed by Louisiana Constitution Art. 1, Sec. 13 and the Sixth Amendment of the United States Constitution.
In the present case, the defendant has alleged that his attorney's performance was ineffective based upon the following errors:

*573 1) Defense counsel was ineffective in failing to request that the trial court excuse the juror when advised about improper contact between the juror and a police sergeant during the trial, or at a minimum request an evidentiary hearing.
2) Defense counsel was ineffective for failing to object to repetitive questions of the State as to the witness' prior discussions with defense counsel.
3) Defense counsel was ineffective for opening the door to appellant's previous arrest record in direct examination.
4) Counsel was ineffective for failing to object to improper prosecutorial comment relating to a "plebiscite on crime", inviting the jurors to consider the larger social implications of their verdict.
5) Counsel was ineffective in failing to object to the reasonable doubt jury instructions.
Normally, a claim of ineffective assistance of counsel is addressed through an application for post conviction relief, rather than direct appeal, so that the trial court may create an adequate record for review. State v. Campbell, 97-369 (La.App. 5 Cir. 11/25/97), 703 So.2d 1358. "If, however, the record contains sufficient evidence to decide the issue, an appellate court can consider this allegation in the interest of judicial economy." Id.
In the present case, the record before this Court does not contain any information regarding the defendant's claim that his attorney was ineffective per se because he was not eligible to practice law at the time of the defendant's trial (see supra discussion following Assignment of Error # 1.) Defendant's complaints regarding ineffective assistance of counsel are better addressed simultaneously in an application for post-conviction relief, as provided in LSA-C.Cr.P. arts. 924-930.8. Requiring the issue of ineffective assistance of counsel to be addressed in a proceeding for post-conviction relief provides time to conduct a full evidentiary hearing before the trial court, and thus create an adequate record for appellate review. Therefore, we decline to address the issues of ineffective assistance of counsel at this juncture.

ASSIGNMENT OF ERROR NUMBER THREE
The appellant respectfully urges that the evidence presented at trial was constitutionally insufficient to support a verdict of guilty beyond a reasonable doubt.
The defendant claims that the state did not offer evidence sufficient to support his conviction because no evidence established that he knowingly and intentionally possessed cocaine with the specific intent to distribute. Specifically, the defendant claims that there was (1) no evidence of drug paraphernalia in the car and (2) no fingerprints on the bags containing the cocaine. He also argues that Officers Blankenship and Williams gave conflicting and/or confusing testimony.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. See also State v. Rosiere, 488 So.2d 965 (La. 1986).
The defendant was convicted of possession of cocaine with the intent to distribute, in violation of LSA-R.S. 40:967(A)(1), which makes it unlawful for any person, knowingly and intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
*574 Although the defendant complains that the state offered no evidence establishing that he possessed cocaine with the specific intent to distribute it, in his statement to Officer Crossen, the defendant himself admitted that the cocaine was his and that he was planning to distribute it. While it is true that, during his trial, the defendant claimed that he had lied in his statement regarding knowledge and ownership of the cocaine in an effort to protect Mr. Chisolm, Officer Blankenship testified that he saw the defendant holding one of the clear plastic bags containing a white substance that later tested positive for cocaine. Officer Williams, accepted as an expert in narcotics and narcotics trafficking, testified that the packaging of the cocaine in plastic bags was consistent with packaging used by a street dealer or distributor of cocaine.
Although the defendant presented both his own testimony and that of Mr. Chisolm in an effort to cast the blame for the cocaine on Mr. Chisolm, the jury apparently did not believe either the defendant's or Mr. Chisolm's testimony at trial. It is the role of the fact-finder to weigh the respective credibilities of witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. State ex rel Graffagnino v. King, 436 So.2d 559, 563 (La. 1983). A rationale trier of fact, viewing the evidence in the light most favorable to the state, could have found the evidence sufficient to support the defendant's conviction.

ASSIGNMENT OF ERROR NUMBER FOUR
The appellant respectfully urges that the court erred in his habitual offender adjudication because the state did not meet its burden to prove the appellant's prior guilty plea was knowing and voluntary, nor did the waiver of rights form contain any identification that the signature was appellant's.
On December 3, 1997, the state filed a multiple offender bill of information, alleging that the defendant was a second felony offender. On March 11, 1998, a hearing was held on the multiple offender bill of information. At the conclusion of the hearing, the defendant was adjudicated a second felony offender. The trial court vacated the defendant's original sentence and sentenced him to an enhanced sentence of twenty (20) years imprisonment at hard labor.
The defendant complains that the state did not demonstrate that his previous guilty pleas were made knowingly and voluntarily because the state did not meet its burden, as set forth in State v. Shelton, 621 So.2d 769 (La.1993), of presenting competent evidence demonstrating the existence of a prior felony conviction and that the defendant was the person who was convicted of the prior felony. The defendant also complains that the trial judge did not, pursuant to Shelton, conduct a weighing of the evidence to "determine whether the evidence submitted by the State proved the appellant's prior guilty plea was informed and voluntary."
In State v. Winfrey,[4] this Court noted that the relative burdens of proof as established in Shelton are as follows:
To prove that a defendant is an habitual offender, the state need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. [cite omitted] In the wake of Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391, the Louisiana Supreme Court adopted a new scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769 (La.1993). This Court succinctly summarized that *575 scheme in State v. Conrad, 94-232 (La. App. 5th Cir.11/16/94), 646 So.2d 1062, 1064, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345 as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. * * *
In the present case, the state showed that the defendant pled guilty in Orleans Parish in 1994 to possession of cocaine, in violation of LSA-R.S. 40:967(C)(2), and that he was represented by counsel at that plea. The state presented the following documents: the waiver of rights form, the minute entry, both dated April 18, 1994, and the bill of information. Specifically, the minute entry reflects that the trial judge informed the defendant "as to the right to have a trial by jury, the right to face his accusers, the right against self-incrimination...," and that the defendant was represented by an attorney named Mr. Keith Lewis. The waiver of rights form also reflects the same information. The bill of information contained two thumbprints on the reverse side that matched Jordon's prints taken in the instant case on the day of the multiple offender hearing. We also note that at trial, defendant admitted to having a previous conviction in Orleans Parish in 1994 for possession of cocaine.
According to Shelton, the burden then shifts to defendant to affirmatively prove an infringement on his rights or a procedural irregularity in the taking of the plea itself. State v. Winfrey, 703 So.2d at 78-80. The defendant did not produce evidence of either. The defense attorney stated "I object generally, Your Honor" at the time that the state offered, filed and introduced the previous plea documents into evidence, but did not state any grounds for his objection. Following admission of the state's exhibits into the record, defense counsel did not argue that the defendant was not adequately advised of his constitutional rights prior to pleading guilty to the predicate offense, nor did he argue that the defendant was not represented by counsel when he pled guilty. Moreover, the defendant introduced no evidence at any time during the hearing on the multiple offender bill of information that "affirmatively proved an infringement existed on his rights or a procedural irregularity occurred in the taking of the plea itself." Id. In fact, when the trial judge asked the defense attorney whether he had any evidence that he wanted to present regarding the multiple offender hearing, the defense attorney stated that "[t]here's no further evidence at this time, Your Honor."
Therefore, because the defendant failed to introduce evidence that affirmatively proved an irregularity during the prior guilty plea or an infringement of his rights, the defendant failed to meet his burden of proof under Shelton.[5] This assignment of error merits no consideration.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, as per LSA-C.Cr.P. art. 920.
During sentencing, the trial judge did not advise the defendant of the prescriptive period for post-conviction relief, as is mandated by LSA-C.Cr.P. art. 930.8(C). Therefore, we order the trial judge to inform the appellant of the provisions of this *576 article by sending appropriate written notice to him within ten days of this Court's opinion, and to file written proof in the record that the appellant received such notice.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The defendant's name is spelled alternately Jordon (bill of information, minute entries, commitment) or Jordan (briefs of the state, multiple offender bill of information).
[2] Officer Blankenship did not recall needing a key to open the glove compartment, and Officer Crossen testified that they did not need a key to open the glove compartment.
[3] In the event that the defendant is able to produce evidence in support of his claim that his attorney was ineligible to practice law at the time of his trial, he may raise this issue in an application for post-conviction relief. See LSA-C.Cr.P. arts. 924-930.8.
[4] 97-427, pp. 27-31 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 78-80, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481 (quoting State v. Conrad, 94-232 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062, 1064, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345),
[5] See State v. Carter, 98-24 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, 712, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444.