866 So.2d 973 (2004)
STATE of Louisiana
v.
Rendell F. WASHINGTON.
No. 03-KA-1135.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2004.
*975 Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Appellant, Rendell F. Washington.
Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Court, Parish of Jefferson, Terry M. Boudreaux, Churita Hansell, Trial Counsel, Andrea F. Long, Appellate Counsel, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Rendell F. Washington, Pine Prairie, LA, In Proper Person.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
*976 SUSAN M. CHEHARDY, Judge.
On November 6, 2001, the Jefferson Parish District Attorney filed a bill of information charging defendant, Rendell Washington, with possession with the intent to distribute marijuana within 1,000 feet of Kenner Drug Free Zone # 11, in violation of La. R.S. 40:981.3. Defendant pled not guilty and filed several pre-trial motions.[1]
After a two-day trial that commenced on September 23, 2002, defendant was unanimously found guilty as charged by twelve-person jury. On January 10, 2003, the trial judge sentenced defendant to eight years at hard labor and imposed a $50,000 fine.
On April 28, 2003, the State filed a multiple offender bill of information alleging defendant to be a second felony offender. After a multiple bill hearing on April 30, 2003, the trial court found that the State had proven that defendant was a second felony offender. The trial judge vacated defendant's original sentence for his underlying felony drug conviction and imposed an enhanced sentence of 22½ years without the benefit of probation or suspension of sentence. Defendant filed a timely motion for appeal.[2]
Facts
On September 25, 2001, Detective Reynaldo Suarez of the Kenner Police Department was on patrol with his partner, Detective Sandino, in a high crime area in Kenner when they observed a black male on the corner of 27th Street and Panama flagging down vehicles. The detectives parked their unmarked police car about one block away and conducted surveillance.
During surveillance, Detective Suarez saw the man flag down a couple of vehicles. The man also walked toward the middle of the block of 27th Street to meet another man. The two men engaged in a quick conversation. Detective Suarez then observed a hand-to-hand transaction between the men. Specifically, Detective Suarez saw the first man remove something from his left front pocket and hand it to the second man. Although Detective Suarez did not see what was exchanged, he believed the men exchanged money.
The detectives decided to approach the two men. When they did, the men ran in opposite directions. Detective Suarez chased the first suspect. As Detective Suarez was chasing his suspect, the man slowed down as he was reaching into his pocket. When the suspect slowed down, Detective Suarez caught him immediately after he discarded a clear plastic bag containing five smaller bags of marijuana. Detective Suarez subdued the suspect, later identified as the defendant. Detective Suarez also retrieved the bag. When defendant was searched incident to his arrest, Detective Suarez found that defendant was holding a crumpled ten dollar bill in his right hand. No drug paraphernalia *977 was found on defendant at the time of his arrest.
At trial, defendant testified that, on the evening in question, he borrowed his mother's jeep to go to the store. On his way to the store, he stopped and talked to his friend, Terrell Hines. Defendant stated Hines had just given him two dollars to purchase a drink for him from the store when the police approached defendant's vehicle. Washington's mother and Hines corroborated these events. Defendant also testified that he ran from the police because he was driving on a suspended license and had an outstanding warrant for his arrest. He denied ever having or throwing down the marijuana.
In his first counseled assignment of error, defendant contends that the evidence was insufficient to support his conviction for possession of marijuana with the intent to distribute. He claims that the State failed to prove he had the specific intent to distribute the marijuana. He asserts there was no evidence that the amount of marijuana found was inconsistent with personal use.
The constitutional standard for sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the State proved all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is involved, the evidence must exclude every reasonable hypothesis of innocence. LA. R.S. 15:438; State v. Gilbert, 02-922 (La.App. 5 Cir. 1/28/03), 839 So.2d 250, 253. The reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events" but rather must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (U.S.La.10/31/94).
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. La. R.S. 40:966(A); State v. Kelly, 01-321 (La. App. 5 Cir. 10/17/01), 800 So.2d 978, 982, writ denied, 01-3266 (La.11/1/02), 828 So.2d 565. We note that, on appeal, defendant does not challenge the finding that he was in possession of marijuana but rather challenges the determination that he had specific intent to distribute marijuana.
Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Kelly, 800 So.2d at 982. Factors which may give rise to a reasonable inference that defendant had the specific intent to distribute include 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. Id. Mere possession of a drug does not evidence intent to distribute absent circumstances from *978 which intent to distribute may be inferred unless the quantity is so large that no other inference is possible. State v. Hearold, 603 So.2d 731, 735-736 (La.1992).
In the present case, defendant was observed discarding a clear plastic bag that contained five smaller bags of marijuana totaling 16.1 grams. Detective Blane Donnovan, an expert in the packaging, distribution and handling of narcotics, testified that the packaging of the marijuana was consistent with distribution. He explained that the five bags were "dime" bags and sold for ten dollars each on the street.
Detective Donnovan further stated that the lack of drug paraphernalia found on defendant evidenced his intent to distribute it rather than use it for personal consumption. He explained that the marijuana is smoked using a pipe or rolling papers. He testified the fact defendant did not have a pipe or rolling papers in his possession indicated defendant did not intend to smoke the marijuana himself.
Detective Donnovan further noted that the area where the offense occurred was a high crime area. Detective Donnovan opined that the fact that defendant fled, discarded the marijuana when the police tried to stop him, and had ten dollars in his right hand when he was stopped indicate that the hand-to-hand transaction, which the police officers observed, was for "that ten dollar bill and one of these bags." Although Detective Donnovan stated on cross-examination that it was not inconceivable that someone could buy five ten-dollar bags for his own use, he stated that, based on the factors present in the case, there was no doubt in his mind that the marijuana was for distribution.
Reviewing the factors from State v. Kelly, 800 So.2d at 982, which give rise to a reasonable inference that a defendant had the specific intent to distribute, the record reflects that a majority of the factors are present. Regarding the first factor, defendant testified that he had a prior conviction for distribution of cocaine. Regarding the second factor, Detective Donnovan testified the marijuana was packaged in a form, "dime" bags, consistent with distribution. In support of the third and fourth factors, although Detective Donnovan stated it was not inconceivable the 16.1 grams of marijuana could be used by one person, he concluded, based on other existing facts, that defendant did not intend to personally consume the marijuana. Finally, Detective Donnovan further cited a lack of a pipe or rolling papers to show defendant did not intend to personally consume the marijuana. We conclude that the facts of this case support the inference that defendant had specific intent to distribute the marijuana. Furthermore, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the State proved all of the essential elements of the crime of possession with intent to distribute marijuana beyond a reasonable doubt. Cf. State v. Gilbert, 02-922 (La. App. 5 Cir. 1/28/03), 839 So.2d 250, 256. We find that this assignment lacks merit.
In his second counseled assignment of error, defendant argues that the trial court erred in denying the motion for mistrial on the grounds that the prosecutor asked Mr. Washington about prior arrests. Defendant specifically argues that the State improperly asked him about prior arrests as opposed to prior convictions. He contends that he was prejudiced by the State's question because he was forced to admit he had a prior arrest for the same charge for which he was presently on trial. The State responds, as the prosecutor did at trial, that defense counsel opened the door to questions regarding defendant's prior arrests when counsel asked defendant, *979 on direct examination, if he had ever been incarcerated. The State further claims even if the questions regarding defendant's prior arrests were improper, they constituted harmless error.
At trial, defendant testified in his own defense. In explaining the events leading up to his arrest and why he ran from the police, defendant testified he had been incarcerated on a drug conviction and had been released in 2000. Defense counsel followed up by asking, "For what crimes were you incarcerated?" Defendant replied that he sold crack cocaine to an undercover officer. Defense counsel then asked defendant whether he had pled guilty to simple escape and possession of stolen property when he pled guilty to distribution of crack cocaine and defendant responded affirmatively. Defendant then stated that he served "13 months in Cottonport and was released on parole for 18 months."
On cross-examination, the prosecutor asked defendant, "Were you ever incarcerated for distribution of marijuana?" Then, the following exchange occurred:
Defendant: No, ma'am.
Prosecutor: Never. Not in 1996?
Defendant: I never was incarcerated for it. They had brung [sic] me to jail for marijuana.
Prosecutor: So, they arrested you for marijuana in 96, you recall this?
Defendant: Uh-huh.
Prosecutor: Any other arrests for marijuana or any other drugs?
At that point, defense counsel objected. The prosecutor argued defendant opened the door by talking about his arrests and convictions on direct examination. Without formally ruling on the objection, the trial court stated defense counsel only inquired into defendant's convictions. The prosecutor resumed questioning by asking defendant about his convictions. Thereafter, the prosecutor again asked, "When were you arrested for distribution of marijuana?" Defendant replied he did not have any marijuana. The prosecutor then proceeded to question defendant on unrelated matters.
At the conclusion of defendant's testimony and outside the presence of the jury, the parties had additional discussions regarding the prosecutor's inquiries into defendant's prior arrest. Defense counsel made a formal motion for a mistrial on the basis the State elicited testimony from the defendant regarding whether he had been incarcerated for distribution of marijuana. The prosecutor argued that defense counsel had opened the door to the question by asking defendant on direct examination about the crimes for which he had been incarcerated. Defense counsel stated he intended his question to refer to defendant's incarceration in Cottonport. Defense counsel explained his question immediately followed defendant's testimony about being incarcerated in Cottonport.
The trial court ordered the court reporter to play back portions of defendant's testimony. After listening to the tape, the trial court denied defendant's motion for a mistrial finding defense counsel specifically asked defendant, "for what crimes were you incarcerated?" The trial court concluded defense counsel did not limit his question to defendant's convictions relating to his time in Cottonport and, therefore, opened the door for the State to question defendant regarding any incarceration whether it was for an arrest or a conviction.
Every testifying witness in a criminal case, including the defendant, subjects himself to limited examination relative to his criminal convictions. La. C.E. art. 609.1(A). Generally, evidence of arrests for which there has not been a conviction *980 is not admissible upon the issue of credibility. La. C.E. art. 609.1(B); State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99.
La.C.Cr.P. art. 770 provides that a mistrial shall be ordered when the district attorney makes a remark or comment within the hearing of the jury referring directly or indirectly to "[a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]" The introduction of inadmissible other crimes evidence is subject to a harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102.
It is well recognized that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination. State v. Edwards, 420 So.2d 663, 675 (La. 1982). Any doubt as to the propriety or extent of cross-examination is resolved in favor of the cross-examination. State v. Edwards, 420 So.2d at 675.
The issue in the present case is whether inquiring into crimes for which a defendant has been incarcerated opens the door to a defendant's arrest record. In State v. Cotten, 438 So.2d 1156, 1162 (La.App. 1 Cir.1983), writ denied, 444 So.2d 606 (La. 1984),[3] our brethren on the First Circuit found no error when the prosecution asked defendant questions about his prior arrests. The court acknowledged that references to an arrest, even for impeachment purposes, was impermissible and generally required a mistrial.
However, in finding no error, the court reasoned that defendant "opened up" the issue of his arrest record when defense counsel questioned defendant on direct examination about his previous arrest record. Defendant had denied on direct examination that he had ever been arrested. On cross-examination, defendant admitted had been arrested for driving without a license and use of an unauthorized movable vehicle. The court stated that the prosecution is "not precluded from contradicting the defendant's testimony given on direct examination upon an issue which the defendant himself has brought into the case." Id. at 1163. Additionally, in State v. Betancourt, 351 So.2d 1187 (La.1977), the Louisiana Supreme Court found no error when the defendant was cross-examined about prior arrests to impeach his testimony on direct that he had never "been in any kind of trouble with the law" in his life.
To the contrary, in State v. Jackson, 98-277 (La.App. 3 Cir. 2/3/99), 734 So.2d 658, our brethren on the Third Circuit found error when the State asked about the defendant's arrests on re-direct examination of a police officer even though defense counsel asked the police officer on cross-examination *981 whether he had ever arrested defendant. The trial court ruled the defendant had "opened the door" to the issue. In reversing, the appellate court noted that the jurisprudence reviewing other crimes evidence being admitted after a defendant "opens the door" has produced separate lines of decision with inconsistent results.
The Third Circuit, citing State v. Smith, 418 So.2d 534 (La.1982), stated, "[t]he courts of this state have time and again refused to allow prosecutors to exploit a defense counsel's inattention, omission, or mistake by making repeated and persistent prejudicial comments and references about inadmissible evidence of other crimes of the defendant." State v. Jackson, 734 So.2d at 663. The Third Circuit determined the error in allowing details of a prior arrest began with a mistake by the defense counsel and was compounded by the State's decision to exploit the error. Considering the evidence, the court found that the error in allowing the State to introduce other crimes evidence of a similar offense to what defendant was currently charged was not harmless error.
In the present case, it is questionable whether defense counsel opened the door for the State to inquire into defendant's arrests. Defense counsel asked defendant, "[f]or what crimes were you incarcerated?" Defendant replied he had sold crack cocaine to an undercover officer and, at the same time, had pled guilty to simple escape and possession of stolen property.
When read in context, it appears defense counsel was asking defendant about the crimes for which he was incarcerated in Cottonport. The question follows a lengthy explanation by defendant about what happened on the day the incident occurred, during which defendant stated he had previously been "incarcerated for drugs" in Cottonport. Furthermore, the word "incarcerated" generally implies more than a mere arrest. There was no indication defendant was held in jail after his 1996 arrest for distribution of marijuana. Defendant's initial answer to the State's question about whether he had been incarcerated in 1996 for distribution of marijuana demonstrates he understood "incarcerated" to mean something more than an arrest. Defendant admitted he was brought to jail but was never incarcerated for the charge.
Unlike Cotten, defense counsel in the present case did not ask defendant about his arrest record on direct examination. And, unlike Betancourt, defendant in the instant case had not denied any prior criminal activity. In fact, he admitted several past convictions.
Considering the context in which defense counsel asked defendant about the crimes for which he was incarcerated, we do not agree that defense counsel opened the door for the State to ask defendant about his arrest. Thus, we find that the State's questions into defendant's arrest appear improper.
As stated above, inadmissible other crimes evidence which is disclosed to the jury is subject to a harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102. An error is harmless when the guilty verdict actually rendered was surely unattributable to the error. Id. at 100.
In State v. Johnson, defendant was convicted of attempted second degree murder and aggravated burglary. On cross-examination, the defendant admitted several prior convictions, including one for simple burglary. Defendant denied any other convictions for burglary. The State then presented certified court minutes and six bills of information showing defendant had been charged with six counts of simple *982 burglary and had pled guilty to five of the charges.
On appeal, the Court noted that defendant pled not guilty to one of the six charges and, thus, that charge constituted inadmissible other crimes evidence beyond the scope of La. C.E. art. 609.1. Additionally, the appellate court noted defendant pled guilty to one charge and the other five simple burglary charges were nolle prosequied by the State. The appellate court, therefore, reversed defendant's conviction on the basis evidence of the simple burglary charges, with the exception of the charge to which defendant admitted he pled guilty, were not evidence of prior convictions and were erroneously admitted.
The Louisiana Supreme Court applied a harmless error analysis and found the erroneous admission of the evidence showing defendant had been previously charged with five counts of simple burglary was harmless. In so concluding, the supreme court reviewed the evidence and noted defendant's criminal history, consisting of several prior convictions including one for simple burglary, was known to the jury.
In the present case, we find that the State's improper questions regarding defendant's prior arrest were harmless. Here, defendant admitted having a conviction for selling cocaine. Thus, like Johnson, the jury was aware of defendant's criminal history of selling drugs. We conclude that the additional evidence of a prior arrest for distribution of marijuana could not have further prejudiced defendant.
Moreover, we find that the verdict was not attributable to the State's questions regarding defendant's prior arrest for the same offense. In particular, the State presented evidence that the defendant was observed in a hand-to-hand transaction in an area that had received numerous complaints of narcotics activity. Defendant fled when approached by the police and discarded five "dime" bags of marijuana. Further, defendant was found with a ten dollar bill in his right hand which, according to the State's expert, is consistent with selling one $10 bag of marijuana. Also, defendant did not have a pipe or rolling papers to indicate that the marijuana was for his personal consumption. Based on the foregoing, we find that this assignment of error lacks merit.
In his third assignment of error, which was submitted pro se, defendant argues that he was denied his right to the effective assistance of counsel as guaranteed by both the Sixth Amendment to the United States Constitution and Article 1, Sec. 13, of the Louisiana Constitution. He first claims he received ineffective assistance of counsel because his trial counsel failed to object to the lack of a hearing or ruling on defendant's motion to suppress the evidence. Defendant contends if his trial counsel had forced a hearing on the motion to suppress evidence, he would have learned only one of the five bags of marijuana was actually analyzed and that the State's expert did not know what was in the other four bags. Defendant asserts trial counsel was further ineffective for failing to object to admission of the four bags which were not tested for marijuana. He maintains if his trial counsel had objected to the admission of the four untested bags, he would have been in a better position to argue simple possession as opposed to distribution of marijuana. Defendant also alleges trial counsel was ineffective for failing to object to the admission of the bags of marijuana because the State failed to establish the chain of custody of the evidence. Defendant next argues he received ineffective assistance of counsel because his trial counsel failed to investigate the case. Defendant *983 alleges his counsel presented a lackluster defense that was contradicted by circumstantial evidence that counsel did not know existed because he failed to investigate. Defendant contends trial counsel failed to consult with him or his two witnesses before calling them to testify. Defendant maintains his counsel did not know he had a criminal past consisting of a prior conviction for distribution of drugs. Thus, defendant asserts trial counsel failed to advise defendant of the dangers in testifying. Defendant also questions trial counsel's tactic in calling the police officer, who chased the other suspect, to testify when the State did not even call him.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In order to show ineffective assistance of counsel, the defendant must demonstrate that 1) his attorney's performance was deficient, and 2) he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. An error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 686, 104 S.Ct. at 2064. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than direct appeal. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La. 1993); State v. McIntyre, supra. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under LA.C.Cr.P. arts. 924-930.8. State v. Rose, 97-943 (La.App. 5 Cir. 1/27/98), 708 So.2d 1093, 1095, writ denied, 98-0673 (La.8/28/98), 723 So.2d 416.
In State v. Watson, 00-1580 (La.5/14/02), 817 So.2d 81, 83-84, the Louisiana Supreme Court found the appellate court erred in addressing defendant's claim of ineffective assistance of counsel on appeal and referred defendant's claim to post-conviction proceedings. The supreme court explained the limited testimony at trial did not provide enough evidence to fully explore defendant's ineffective assistance of counsel claim. In Watson, defendant claimed he received ineffective assistance when his trial counsel failed to file a motion to suppress evidence and failed to object to the introduction of the evidence, an aluminum foil packet, at trial. The appellate court determined the evidence was illegally seized and that defendant's trial counsel was ineffective for failing to file a motion to suppress. The appellate court vacated defendant's conviction and sentence which were subsequently reinstated by the Louisiana Supreme Court before the matter was relegated to post-conviction relief. See also, State v. Lipscomb, 00-2836 (La.1/25/02), 807 So.2d 218(the issue of ineffective assistance of counsel claim relating to a trial counsel's *984 failure to file a motion to suppress was more properly addressed in an application for post-conviction relief).
Additionally, in State v. Jordon, 98-823 (La.App. 5 Cir. 3/10/99), 732 So.2d 569, 573, writ denied, 99-998 (La.9/17/99), 747 So.2d 1098, this Court refused to address defendant's ineffective assistance of counsel claim on appeal on the basis the record did not contain any information to support defendant's allegations. This Court determined defendant's claim for ineffective assistance of counsel was better addressed in post-conviction relief, which allows for a full evidentiary hearing thereby creating an adequate record for appellate review.
Based on Watson and Jordon, we decline to address defendant's claim on appeal. This assignment of error is more properly addressed in post-conviction relief proceedings where defendant may have an opportunity to have an evidentiary hearing on his claims of ineffective assistance of counsel.
Finally, according to La. C.Cr.P. art. 920, we have reviewed the record errors patent and found the following errors, which require remediation. First, both the original commitment and the multiple offender commitment show defendant was advised of the two-year prescriptive period for post-conviction relief pursuant to La.C.Cr.P. art. 930.8. Neither sentencing transcript reflects that defendant was advised of prescriptive period for La.C.Cr.P. art. 930.8. Generally, where there is a discrepancy between the transcript and commitment, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand this matter with instructions that the trial court inform that defendant of the two-year prescriptive period by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice. State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618, writ denied, 03-0200 (La.10/10/03), 855 So.2d 326.
Second, as noted by the State, the defendant received an illegally lenient sentence. When a defendant is sentenced as a habitual offender, "the penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Fletcher, 03-60 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222.
A defendant convicted of the underlying offense, possession with intent to distribute marijuana within 1000 feet of a drug free zone,[4] is subjected to the maximum fine authorized by La. R.S. 40:966, which is $50,000.00.[5] Further, La. R.S. 40:966(B)(2) requires that "at least five years" of the sentence for a person convicted under that provision shall be served without benefit of parole, probation, or suspension of sentence.
In its appellee brief, the State notes that the trial court failed to impose the mandatory fine and failed to deny parole eligibility for a portion of defendant's enhanced sentence. First, we note that the State failed to object to defendant's illegally lenient sentence in the trial court. Further, while we have the authority to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or even on appeal, pursuant to State v. Williams, 00-1725 *985 (La.11/28/01), 800 So.2d 790 and La. C.Cr.P. art. 882, our authority is permissive rather than mandatory. In this case, we will refrain from amending defendant's sentence to impose the $50,000 fine. State v. Jordan, 02-820 (La.App. 5 Cir. 12/30/02), 836 So.2d 609, 614. Finally, we note that the statutory requirement that five years of defendant's sentence be served without the benefit of parole, probation or suspension of sentence is self-activating under State v. Williams. See, State v. Jerome, 03-126 (La.App. 5 Cir. 4/29/03), 845 So.2d 1194, 1199.
AFFIRMED; REMANDED.
NOTES
[1] The record does not reflect that the trial court ruled on defendants pre-trial motions; however, defendant waived this defect by proceeding to trial without objection. See, State v. Fletcher, 02-707 (La.App. 5 Cir. 12/30/02), 836 So.2d 557, 559, writ denied, 03-409 (La.10/10/03), 855 So.2d 334. Defendant raises the lack of rulings as a pro se assignment of error.
[2] On January 10, 13, and 24, 2003, defendant filed motions for appeal, which were all granted. Those motions were premature because they were filed after conviction and sentence, but before the sentence as a multiple offender. However, this procedural defect was cured by the subsequent re-sentence. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354. After his multiple offender sentencing, defendant also filed a fourth motion for appeal on May 2, 2003.
[3] State v. Cotten, supra, was decided when La. R.S. 15:495 was still in effect. La. R.S. 15:495 was repealed on January 1, 1989 when the Louisiana Code of Evidence went into effect. See, State v. Tolbert, 03-0330 (La.6/27/03), 849 So.2d 32, 35, fn. 2. Like La. C.E. art 609.1, repealed La. R.S. 15:495 prohibited the questioning of a witness concerning arrests.

Repealed La. R.S. 15:495 provided:
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
[4] La. R.S. 40:981.3(E)
[5] Defendant's original sentence, which was vacated after he was found to be a multiple offender, was imposed with a fine of $50,000.00.