919 So.2d 787 (2005)
STATE of Louisiana
v.
Dung TRAN.
No. 05-KA-518.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
*789 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Juliet Clark, Appellate Counsel, Jacqueline Maloney, Trial Counsel, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Appellee, State of Louisiana.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Appellant, Dung Tran.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
On November 7, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Dung Tran, with possession of propoxyphene, a violation of La. R.S. 40:969 C. Defendant was *790 arraigned on December 17, 2003 and pled not guilty. On October 27, 2004, the matter was tried before a six-person jury, which found defendant guilty as charged. On November 4, 2004, the trial court sentenced defendant to five years imprisonment at hard labor.

Facts
On September 9, 2003, Officers Christopher Morris, Daniel Johnson, and Corey Boudreaux of the Westwego Police Department were conducting routine narcotics investigations in unmarked vehicles. Officer Boudreaux testified that, although they were in unmarked vehicles, each of the officers was wearing black t-shirts with "police" written across the front.
That evening, Officer Morris was driving westbound on the Westbank Expressway when an asian man, who was standing with a white female, tried to flag him down at the intersection of Central Avenue and Westbank Expressway in Westwego. Officer Morris was alerted because he had previously made drug arrests at this intersection. Officers Johnson and Boudreaux were following Officer Morris in another unmarked vehicle.
Officer Morris did not stop at the intersection and, by the time that he had circled around and returned to the intersection, the man had flagged down another vehicle. Officer Morris explained that there were three black males in the flagged-down vehicle. Officer Morris saw the white female and the asian male get into the back seat of that vehicle. As Officer Morris pulled up, the asian man exited the vehicle, but the white female stayed inside.
Officer Morris testified that he activated his lights, but the asian man attempted to walk away from the scene. The officers required everyone to exit the vehicle for officer safety. Both Officer Morris and Officer Johnson testified that the people in the vehicle were strangers to both the asian male and the female.
By this time, Officers Johnson and Boudreaux were on the scene. Officer Boudreaux walked toward the asian man, ordered him to return to the scene, and escorted him back to the flagged-down vehicle. Officer Boudreaux testified that he patted down the asian man, later identified as defendant herein, for safety purposes and found a box cutter in the right rear pocket of his pants. Officer Boudreaux felt two small objects very deep in defendant's left front pocket. He testified that he "kind of rolled them around a little bit" and asked defendant what it was. Defendant told him it was for his girlfriend. Officer Boudreaux then removed the objects from defendant's pocket. At trial, Officer Boudreaux identified State's Exhibit 2 as the pills he found in defendant's pocket.
Officer Morris testified that defendant told him the pills belonged to the white female, who was his girlfriend. Officer Morris further testified that the white female told him that she had a prescription for those narcotics, but that she was unable to produce one at that time. He found it unusual that defendant was carrying his girlfriend's pills when she was capable of carrying her own medication in the pockets of the shorts she was wearing.
Andrea Travis, a forensic scientist with the Jefferson Parish Sheriff's Office Crime Lab, was accepted at trial as an expert in the field of analysis and identification of controlled dangerous substances. She testified that the two pills, which were admitted as State's Exhibit 2, tested positive for dextropropoxyphene, the controlled substance in the drug commonly known as Darvocet.
The defense called Robin Waterman Albarado as a witness. Albarado testified *791 that she and the defendant had a relationship in the past and had two children together. Albarado testified that, on September 9, 2003, she lived one block from Central Avenue and Westbank Expressway. She explained that, at approximately 6:30 p.m. that evening, she and defendant decided to take a bus to his mother's house where they were going to spend the night.
When Albarado reached the corner of Central Avenue and Westbank Expressway, she saw a vehicle that she thought belonged to her neighbor and waved for her to stop. When the vehicle stopped, she saw that the driver was not her neighbor, but she recognized the passenger as "Tiny" from Adult Education, so she got in the car and asked for a ride. She testified that they wanted $10.00 for gas, which she thought was too much so she got out of the vehicle.
As she was getting out of the vehicle, she saw the Westwego police pull up. Albarado told one of the officers that the drugs found on defendant were hers and that she had a prescription for them at her house. At trial, Albarado produced a printout of prescriptions she had filled at Majoria's Pharmacy, which reflected that she had gotten a prescription for 45 Darvocet pills filled on February 17, 2003 and a refill for 45 more on March 17, 2003.
Albarado testified that she gave defendant the drugs to hold for her because the pockets in her shorts were "slit and very shallow," would not hold anything, and had caused her to lose money earlier that day while she was walking to Piggly Wiggly. She further testified that she only gave defendant two pills because that was all she needed to spend the night out, and she did not want to bring the large bottle of pills with her. She explained that she was taking Darvocet because of back pain due to a broken tailbone. She said she was also taking medication for high blood pressure, anxiety, and insomnia. Albarado testified that she had felony convictions for crime against nature four or five years ago, DWI, and insurance fraud in 1987.
After hearing the testimony and considering the evidence, the jury found defendant guilty as charged. Defendant is appealing his conviction and sentence.
In his first assignment of error, defendant argues that his trial counsel was ineffective for failing to seek suppression of the evidence. He contends that there was not a reasonable basis upon which to conclude that he was engaged in criminal activity sufficient to justify the stop and pat down search upon which the seizure of evidence was based. The State responds that the record is not sufficient to address this matter on appeal, and that it may be more appropriately addressed on application for post-conviction relief.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In order to show ineffective assistance of counsel, the defendant must demonstrate, first, that his attorney's performance was deficient, and, second, that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. An error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 686, 104 S.Ct. at 2064. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068.
*792 A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than direct appeal. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. McIntyre, supra. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La.C.Cr.P. arts. 924-930.8. State v. Rose, 97-943 (La.App. 5 Cir. 1/27/98), 708 So.2d 1093, 1095, writ denied, 98-0673 (La.8/28/98), 723 So.2d 416.
In State v. Watson, 00-1580 (La.5/14/02), 817 So.2d 81, 82-84, defendant claimed on appeal that he received ineffective assistance of counsel because his trial counsel failed to file a motion to suppress evidence and he failed to object to the introduction of the evidence, an aluminum foil packet, at trial. The appellate court determined the evidence was illegally seized and that defendant's trial counsel was ineffective for failing to file a motion to suppress. The appellate court vacated defendant's conviction and sentence. The Louisiana Supreme Court found the appellate court erred in addressing defendant's claim of ineffective assistance of counsel on appeal since the limited testimony at trial did not provide enough evidence to fully explore defendant's ineffective assistance of counsel claim. The supreme court reinstated defendant's conviction and sentence then relegated the matter to post-conviction relief. See also, State v. Lipscomb, 00-2836 (La.1/25/02), 807 So.2d 218(the issue of ineffective assistance of counsel claim relating to a trial counsel's failure to file a motion to suppress was more properly addressed in an application for post-conviction relief).
In State v. Washington, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 983-984, and State v. Jordon, 98-823 (La.App. 5 Cir. 3/10/99), 732 So.2d 569, 573, writ denied, 99-998 (La.9/17/99), 747 So.2d 1098, this Court refused to address defendants' ineffective assistance of counsel claim on appeal on the basis that the record did not contain sufficient information to analyze defendants' allegations. This Court determined defendants' claim for ineffective assistance of counsel were better addressed in post-conviction relief, which allows for a full evidentiary hearing thereby creating an adequate record for appellate review.
In the instant case, the constitutional validity of the initial stop, the pat down search for weapons, and the seizure of the two Darvocet pills was not raised in the trial court. Further, neither the State nor the defense scrutinized the detailed circumstances surrounding the incident. The trial testimony of the officers focused only on the State's burden to establish that defendant possessed Darvocet beyond a reasonable doubt.
In light of the very limited testimony entered into evidence and the procedural posture of this case, we decline to address defendant's claim of ineffective assistance of counsel. A hearing in the trial court on a properly filed petition for post-conviction relief can illuminate the record and allow the court to hear evidence relating to defendant's claim of ineffective assistance of counsel. State v. Watson, supra; State v. Washington, supra; and *793 State v. Jordon, supra. This assignment of error lacks merit.
In his second assignment of error, defendant argues that the maximum sentence the trial court imposed was constitutionally excessive. He contends that nothing in the record warranted such an extreme punishment, and that he is not the most egregious and blameworthy of offenders. The State responds that the sentence was not constitutionally excessive because defendant was armed with a razor knife, or box cutter, during the incident; had a prior criminal conviction; and the trial judge did not impose a fine.
Defendant timely filed three pro se motions to reconsider sentence asking the trial court to sentence him to a lesser sentence because: he learned from his mistake and would do whatever it took if given another chance to better himself and take care of his family; his last conviction was approximately 17 years ago; he had been incarcerated for the present offense for more than ten months; he only possessed two pills; and he was not out selling, stealing, or robbing anybody and, therefore, there was no victim involved in this crime.
Both the United States and the Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and a sentence will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068, 1069.
In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. In reviewing a trial court's sentencing discretion, three factors are considered: the nature of the crime; the nature and background of the offender; and the sentence imposed for similar crimes by the same court and other courts. Id. Maximum sentences are appropriately imposed only for the most serious violation of the described offense and for the worst kind of offender. State v. Perrilloux, 03-917 (La.App. 5 Cir. 12/30/03), 864 So.2d 843, 854, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 830.
Defendant was charged with and convicted of possession of propoxyphene, a violation of La. R.S. 40:969(C), which provides as follows:
It is unlawful for any person unknowingly or intentionally to possess a controlled dangerous substance classified in Schedule IV unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978, while acting in the course of his professional *794 practice or except as otherwise authorized by this Part.
La. R.S. 40:969(C)(2) provides that a person convicted of possession of a substance classified in Schedule IV "shall be imprisoned with or without hard labor for not more than five years and, in addition, may be required to pay a fine of not more than five thousand dollars." Dextropropoxyphene is a Schedule IV substance. La. R.S. 40:964.
In the instant case, the trial judge sentenced defendant to the maximum five-year sentence at hard labor without providing reasons. He did not impose a fine.
In State v. Reed, 615 So.2d 1027, 1028-1030 (La.App. 1 Cir.1993), defendant was convicted of possession of alprazolam, a violation of La. R.S. 40:969(C), and was sentenced to five years at hard labor. The appellate court found no abuse of discretion in the sentence imposed considering defendant's lengthy criminal record. The First Circuit noted that defendant was not a youthful offender as he was 38 years old at the time of sentencing.
In State v. Ellis, 525 So.2d 548, 549-550 (La.App. 3 Cir.1988), defendant was convicted of possession of a Schedule IV controlled dangerous substance, dextropropoxyphene, and was sentenced to serve four years at hard labor and fined $1,000.00. The appellate court upheld the sentence, noting that the trial judge amply complied with the guidelines by considering defendant's age, abused childhood, prior felony conviction, and letters written on behalf of defendant.
In this case, trial testimony reflected that defendant was in possession of a box cutter at the time of the incident. Further, the officers observed defendant attempting to flag down passing vehicles at night in a known drug area, which suggests that defendant may have been attempting to distribute the Darvocet in his possession.[1] Additionally, defendant, who admitted his prior conviction, was 44 years old at the time of sentencing and, thus, not a youthful offender. Finally, the trial judge did not impose a fine. Based on the foregoing, we find no abuse of the trial court's discretion in sentencing defendant to five years at hard labor and, further, that sentence was not constitutionally excessive. This assignment lacks merit.
Finally, defendant requests an error patent review. We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920. Our review reveals errors in this case, which require correction.
First, there is a discrepancy between the November 4, 2004 minute entry and transcript. The minute entry for defendant's hard labor commitment states that the defendant has two years after his conviction and sentence becomes final to file for post-conviction relief. The transcript for that same date, however, indicates that the trial judge informed the defendant that he had "... two years to file for post conviction relief and 30 days to appeal this sentence." Where, as there is here, there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Guerra, 03-1071 *795 (La.App. 5 Cir. 12/30/03), 865 So.2d 154, 157.
Second, La.C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Accordingly, defendant received an incomplete advisal of his rights. Therefore, we remand this case to the trial court with instructions to inform the defendant of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant after the rendition of this Court's opinion and filing written proof that the defendant received the notice in the record. State v. Hutchinson, 02-60, p. 10 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
AFFIRMED; REMANDED.
NOTES
[1] See State v. Brown, 04-230 (La.App. 5 Cir. 7/27/04), 880 So.2d 899. In Brown, defendant was convicted of second offense possession of marijuana and sentenced to the maximum five-year sentence. This Court found that the sentence was not excessive, noting that the 20-year-old defendant committed the offense within three months of being convicted of possession with intent to distribute marijuana and that deputies observed defendant attempting to flag down passing cars which suggested defendant may have been attempting to distribute the marijuana in his possession. Id. at 902-903.