889 So.2d 1039 (2004)
STATE of Louisiana
v.
Joseph McDONALD.
No. 04-KA-550.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 2004.
*1040 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Roger Jordan, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
James A. Williams, Butch Wilson, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
SOL GOTHARD, Judge.
Defendant was charged with two counts of cocaine distribution in violation of La. R.S. 40:967(A). After trial on the merits, *1041 he was found guilty as charged as to both counts. The trial court sentenced defendant to imprisonment at hard labor for ten years on each count, to be served concurrently, the first two years of which would be served without benefit of parole, probation, or suspension of sentence. Pursuant to a habitual offender bill, defendant was found to be a second felony offender. The trial court vacated the original sentence on count one and imposed an enhanced sentence of fifteen years at hard labor to run concurrently with the sentence on count one. Defendant now appeals.

FACTS
Sergeant Joseph Williams, a narcotics agent with the Jefferson Parish Sheriff's Office, testified that he is assigned to the Narcotics Undercover Operations Group. It is a federally funded task force assigned to investigate street-level narcotics dealing in problem neighborhoods.
Williams received citizen complaints about drug dealing at 233 Bishop Drive in Avondale. In response, he arranged for an undercover officer to attempt a drug buy at that location. That officer, Veronica Gordon, was supplied with pre-marked currency and a transmitter that allowed surveillance officers to monitor her activities. She used an unmarked vehicle which was equipped with a video camera.
At about 5:00 p.m. on October 7, 2002, Gordon drove to 233 Bishop Drive. She testified that she saw defendant talking to someone in the driveway of the residence. She parked in front of the house and rolled down her window. She asked defendant if he knew where she could get two twenties (i.e., two rocks of crack cocaine, which sell for $20 each). Defendant asked Gordon whether she was a police officer, and she said she was not. Defendant told her to get out of her vehicle, indicating he would sell to her. Gordon complied. She testified that defendant went into the house and returned minutes later with three rocks. He handed Gordon the rocks in the driveway, and she gave him $40. Gordon explained that defendant gave her three rocks instead of the two she asked for because they were small.
Agent Lisa Thornton of the narcotics division testified that she was part of Gordon's surveillance team on October 7, 2002. Thornton met Gordon at a prearranged location after the buy, and collected the evidence from her. Thornton reviewed videotape taken by the camera in Gordon's vehicle. She recognized defendant based on prior investigation she had done. She compiled a photographic lineup, which included a picture of defendant. She showed it to Gordon on the evening of October 7, 2002. Gordon identified defendant as the man from whom she had bought the rocks. Gordon also identified defendant in court.
Gordon testified that she was involved in a second undercover transaction on October 11, 2002. At about 3:00 p.m. she drove to the Bishop Drive house in an unmarked vehicle. Again she was supplied with audio and video equipment. Gordon testified there were several individuals hanging around in front of the house. She parked in front, and held up five fingers to indicate she wanted five twenties. Gordon asked defendant, who was standing in the driveway, if she could get out of her vehicle. He told her she could, and she got out of the car. One of the men standing nearby asked her if she was a police officer. She replied that she was a crackhead, and retrieved a crack pipe from the car as an offer of proof.
Gordon asked defendant whether he had five twenties with him, and he said he did. Gordon testified that defendant pulled a clear plastic bag from his pocket. It contained a yellow-tinted rock, larger than the three she received on October 7. Gordon gave defendant five $20-bills. Defendant *1042 walked to the front door of the house. Gordon watched as he stood in the doorway and broke the rock into smaller pieces with a hard object. Defendant then handed her five pieces. Gordon gave the rocks to Agent Pat DiGiovanni, one of the backup officers. Gordon told the surveillance officers that the second seller was the same man who had sold her the rocks on October 7.
Videotape from October 7 and October 11 was admitted in evidence and shown to the jury. It is noted that defendant appears briefly on the October 7 videotape, but not on the October 11 tape. The actual transactions were not recorded, as they apparently took place out of the camera's range.
DiGiovanni testified that he obtained a search warrant for 233 Bishop Drive. He and Williams executed the warrant on October 11, 2002. The parties stipulated that the only items found in the search were two pieces of mail addressed to defendant. DiGiovanni testified that an arrest warrant for defendant was issued on October 14, 2002. He booked defendant on December 9, 2002.
Andrea Davis, a forensic scientist with the Jefferson Parish Sheriff's Office, was accepted as an expert in the identification and analysis of controlled dangerous substances. She testified that she analyzed the rocks involved in the two purchases, and that they were positive for cocaine.
In his first allegation of error, defendant asserts that his appointed trial counsel, Katherine Guste, was ineffective in several respects. Defendant argues that counsel failed to properly prepare for his competency hearing, that she made no effort to illustrate to the court defects in the police identification procedure at the suppression hearing, that she failed to properly cross-examine State's witnesses, and that her closing argument was damaging to his case.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution provide that a defendant is entitled to effective assistance of counsel. In order to show ineffective assistance of counsel, a defendant must demonstrate (1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). In order to show prejudice, the defendant must show that, but for his counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. But when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1247, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. State v. LaCaze, 824 So.2d at 1078-1079.
*1043 We have reviewed defendant's specific allegations herein as they relate to his claim of ineffective assistance of counsel and find that the instant record is insufficient for a ruling on the merits of defendant's claim.
In his second allegation, defendant argues patent error. The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
While the commitment reflects that the trial court notified defendant of the prescriptive period for applying for post-conviction relief (La.C.Cr.P. art. 930.8), the sentencing transcript does not show defendant was so advised. The habitual offender proceedings are not included in the record (defendant does not appeal his habitual offender adjudication and sentence), so it is unclear whether the court advised defendant under La.C.Cr.P. art. 930.8. Where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Behre, 03-896 (La.App. 5 Cir. 12/9/03), 864 So.2d 668, 672.
Therefore, we instruct the trial court to provide defendant with written notice of the appropriate prescriptive period in accordance with La.C.Cr.P. art. 930.8, and to file written proof of said notice in the record. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
Accordingly, we affirm defendant's conviction and sentence and remand the matter to the trial court for compliance with the above instructions.
AFFIRMED AND REMANDED.