917 So.2d 559 (2005)
STATE of Louisiana
v.
Stanley J. STIRGUS.
No. 05-KA-259.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*560 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Donald A. Rowan, Jr., Cameron M. Mary, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On October 11, 2001, defendant, Stanley J. Stirgus, was charged by indictment with second degree murder, in violation of LSA-R.S. 14:30.1.[1] He pled not guilty on October 18, 2001. On January 28, 2002, the indictment was amended to charge defendant with attempted armed robbery, in violation of LSA-R.S. 14:27:64. Defendant withdrew his former not guilty plea, pled guilty to the amended charge and entered into a plea agreement with the State.[2] On March 7, 2002, the State filed a motion to vacate defendant's guilty plea, asserting *561 that defendant failed to comply with the plea agreement, because he did not testify truthfully at a motion to suppress hearing on February 27, 2002. In April 2002, the trial court set aside the plea agreement and granted the State the right to reamend the indictment to charge defendant with second degree murder. On April 15, 2002, defendant sought review of this ruling, but his writ application was denied by this Court on May 28, 2002.
Another indictment was filed on May 6, 2002, charging defendant, Clayton Weaver, and Peter Lewis with second degree murder. On August 11, 2003, a final indictment was filed, adding Sarah Harris as a co-defendant as well.[3]
Defendant proceeded to trial on December 8, 2003, and a jury returned a verdict of guilty as charged on December 11, 2003. On January 7, 2004, defendant's motion for new trial was granted and his motion for post-verdict judgment of acquittal was denied. The State sought review of the trial court's ruling granting defendant's motion for new trial and on February 20, 2004, this Court reversed the trial court's ruling. Thereafter, a writ was denied by the Louisiana Supreme Court on October 1, 2004.[4]
Defendant was sentenced on November 17, 2004 to life imprisonment without the benefit of parole, probation or suspension of sentence. This appeal follows.

FACTS
In the early morning hours of September 14, 2001 at 324 Ruby Street, Apartment B, Ralph Sterling, also known as "Big Man," died as a result of a gunshot wound to his chest. At the time of this homicide, Brandon Harris, Sarah Harris (Brandon's sister), Shirley Johnson, Shirley's two nephews and her niece were in the apartment.[5]
At trial, Shirley Johnson testified that on the morning of the incident, her nephew heard knocking, so she went to see who was at the door. When she got downstairs, the three perpetrators, whom she recognized as defendant, Peter Lewis and Clayton Weaver, were already in the apartment. Shirley knew defendant prior to the incident and had talked to him before. She also knew Lewis from living across the street. Lewis and Weaver were armed with guns, and Weaver grabbed her leg while Lewis put a gun to her head as she screamed. Defendant, who was unarmed, went upstairs in a room with Shirley, who was sixteen at the time, and her nephews and niece. Defendant gave her a towel to wipe her face and said not to worry, because things would be okay. Weaver and Lewis went into the room where Sarah and Big Man were sleeping. Subsequently, Shirley heard six or seven gunshots.
When the police arrived at the scene, Shirley told a detective that defendant was one of the perpetrators.[6] She provided defendant's first name and a description of the other two perpetrators. Thereafter, on this same day, Shirley identified defendant in a photographic lineup. On the following day, she identified Weaver and Lewis from photographic lineups.
*562 Brandon testified that on the morning of the incident, he was asleep on the sofa at the apartment. He awoke and heard Shirley screaming for Sarah and Big Man. One of the perpetrators walked by the sofa and tried to hide his face with his right arm. After he heard Sarah screaming upstairs and the victim say "I'm going to give it to you," Brandon ran to his sister's house down the street to call the police. From his sister's house, he heard gunshots.
Brandon only saw one perpetrator. Although he did not see his face, he was about two to three feet away from him, and he observed a tattoo of letters on his right arm. Brandon was able to describe the tattoo to Detective Clogher, and he later identified the tattoo in a photograph as the same one he saw on the arm of the perpetrator that night. In addition, he knew the person with the tattoo from the neighborhood, having seen him a few times before, and he identified defendant as that person. At trial, Brandon recognized the photographic lineup from which he identified defendant on September 14, 2001, and stated that he was sure that defendant was the person he saw in the apartment that night.
Defendant's father, a New Orleans Police Officer, brought defendant into the Detective Bureau on September 16, 2001. At the time, defendant was sixteen years old. Defendant gave five taped statements on this day, which were transcribed. These statements were played for the jury at trial.
Defendant's first statement was exculpatory and provided information as to where he purportedly was at the time of the incident. In this statement, defendant claimed he did not know the victim.
In his second statement, defendant admitted that he was in the apartment when the victim was shot, but that he remained downstairs. He stated that he thought they were just going to visit the victim. He admitted that he knew that the other two were armed with what looked like a machinegun and a nine millimeter, but he stated that he did not have a gun. He heard more than two gunshots and left.
In defendant's third statement, he noted that he had just been shown a lineup and he identified "Dough Boy" as the person who was in the apartment armed with a machinegun.[7] He then stated that he was shown a second lineup in which he identified someone he called "Red" who was in the apartment armed with a nine millimeter.[8]
Defendant admitted in his fourth statement that he went upstairs, but he was in another room with Shirley and the children. He stated that he ran after he heard the gunshots.
In defendant's fifth statement, he claimed that a few days before the incident, Dough Boy was talking about a "lick" (strong arm or robbery) of a man with five or six keys (kilos of dope) and twenty two thousand dollars. Dough Boy stated that he needed help and he heard Big Man's name mentioned. Defendant was later told that if he watched someone, he would get four quarters (dope). Defendant admitted that he knew they were armed that night and he was told to go in the room to watch Shirley and the children. He realized what was going on once they threw open the door, heard a couple of things and then heard gunshots. He claimed that he did not realize there was going to be a murder, but he knew there would be a strong arm for dope and/or money.
*563 At trial, defendant testified that he was not at the apartment at the time of the incident. He claimed that the officers forced him to make these statements by grabbing his testicles and hitting him on the head with a phonebook. Detective Meunier denied these allegations.

DISCUSSION
In his first assignment of error, defendant argues that the introduction of inadmissible other crimes evidence in this case was so egregious as to warrant a new trial. Defendant argues that the trial court properly granted his motion for new trial based upon improperly admitted other crimes evidence and that this Court erred in reversing that ruling. The State responds that it was error of law for the trial court to grant defendant's motion for new trial because an injustice was not done or shown by defendant. The State further contends that after considering the evidence presented at trial, the verdict was unattributable to the complained of juvenile evidence.
Defendant argues that, during trial, the jury was permitted to see an "Affidavit" attached to an arrest warrant issued for defendant which contained other crimes evidence.[9] State's Exhibit 82, which requested an arrest warrant and was signed by the juvenile court judge, provided the following:
Criminal History Records list Stanley J. Stirgus as a Serious Habitual Offender (SHO) with arrests for armed robbery, simple burglary, resisting an officer, disturbing the peace, possession of stolen property and a series of status offenses. Additionally, Stirgus's [sic] criminal record includes a New Orleans conviction for armed robbery in 1999 for which he received eighteen months probation.
The State presented this exhibit to Detective Meunier, who identified the document as the warrant that was submitted to the juvenile court judge for defendant's arrest. Without objection from defense counsel, State's Exhibit 82 was offered, filed and introduced into evidence. Later, the State requested to "re-file" all exhibits offered and requested that the exhibits be published to the jury. The court agreed to the request after defense counsel responded that he had no objection, because they had already been ruled admissible.
On December 17, 2003, defendant filed his Motion and Order for New Trial, requesting a new trial because "[t]he evidence presented at trial is clearly contrary to the evidence. Thus it is in the best interest of justice that counsel for the defendant requests that a new trial be ordered." In this motion, defendant argued that Exhibit 81[10] contained a record of a juvenile conviction for armed robbery, which defense counsel did not see at the time it was being introduced. Defendant argued that this exhibit, which was displayed to the jury, contained evidence of other crimes, which was clearly inadmissible, and revealed a juvenile adjudication without proper procedural safeguards, constituting a gross injustice.
On January 7, 2004, defendant's motion for new trial was granted by the trial court. The State filed a writ application, seeking review of this ruling. On February 20, 2004, this Court reversed the trial court's ruling, finding that the trial court abused its great discretion in granting defendant's motion for new trial.
*564 In doing so, this Court noted that the exhibit was introduced into evidence without a contemporaneous objection by defense counsel. This Court further noted that the admission of other crimes evidence is subject to a harmless error analysis. Specifically, this Court provided the following:
In the present case, the record supports a finding that any error in the admission of defendant's juvenile record is harmless. Defendant was identified as one of the three subjects who were involved in the murder. Defendant admitted to the police that he accompanied two armed subjects to the location of the murder. He admitted that he knew before the murder that one of the subjects intended to rob the victim. Defendant knew the two subjects were armed.
Thereafter, on October 1, 2004, the Louisiana Supreme Court denied writs in this matter[11]
Based on the "law of the case" doctrine, an appellate court will generally not reconsider prior rulings made in the same case on subsequent appeal. State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1066, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869. Reconsideration is warranted, however, when in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. State v. Davis, 03-488 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 642 fn. 2, writ denied, 03-3401 (La.4/2/04), 869 So.2d 874. "Judicial efficiency demands that this Court accord great deference to its prior rulings." Id.
This Court has applied the law of the case doctrine in State v. Hollimon, 04-1195 (La.App. 5 Cir. 3/29/05), 900 So.2d 999. In Hollimon, the State had previously sought review of the trial court's ruling granting the defendant's motion to suppress. This Court granted the State's writ application and reversed the trial court's ruling, remanding it for further proceedings. Thereafter, defendant raised the same issues on appeal. This Court refused to reverse its previous ruling which reversed the trial court's decision to grant the defendant's motion to suppress. Id. at 1000-1001. This Court noted that it had thoroughly analyzed the issue and there was no new evidence to warrant reconsideration. Id. at 1001.
In the instant case, this Court has previously considered the merits of defendant's motion for new trial and found that it should be denied. Defendant has produced no new evidence to show that this Court's prior disposition was patently erroneous and produced unjust results. Therefore, under the law of the case doctrine, we will not reconsider our previous ruling on the merits of this motion.
On appeal, defendant contends that this Court should not have previously considered the merits of the motion for new trial, because the trial court's ruling was clearly based on the "ends of justice" ground, pursuant to LSA-C.Cr.P. art. 851(5),[12] *565 which is not subject to appellate review. However, the trial court provided the following reasons for granting the motion:
The evidence of a juvenile conviction, and in particular, juvenile conviction for armed robbery should never have been put before the jury. This Court in no way states that it was done intentionally. However, the prejudice is too great to overcome. The Court is aware that jurors did take note of it in their deliberations; it was stated afterwards that they did. And I think that irrespective of the outcome, the Court feels it can't stand, I'm going to grant the Motion for a New Trial.
The trial judge did not indicate that his ruling was based on an "ends of justice" determination. Rather, the record reveals that the trial court's ruling was based on a finding that inadmissible other crimes evidence was admitted, and such a finding is subject to appellate review.
Considering the record before us and the applicable law, we find that our previous ruling on the merits of defendant's motion for new trial is "law of the case" and should not be reconsidered. Accordingly, we conclude that this assignment of error is without merit.
In his second assignment of error, defendant argues that by failing to object to the other crimes evidence that was attached to the warrant and unwittingly allowing such evidence to be presented to the jury, his trial counsel was ineffective and constitutionally deficient, mandating reversal and a remand for a new trial. Defendant contends that this error is even more egregious since it involves admission of a juvenile adjudication and such error is not harmless. The State responds that the trial counsel's performance was not deficient because it was unintentional and inadvertent. The State adds that defendant failed to show how he was prejudiced by his trial counsel's actions. Specifically, the State notes that this Court, in granting the State's writ application, found the admission of the record to be harmless and, therefore, it cannot be considered prejudicial.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La. App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. To establish a claim for ineffective assistance of counsel, a defendant must demonstrate (1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that his counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). To show prejudice, the defendant must demonstrate that, but for his counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, supra. *566 An error is prejudicial if it was so serious as to deprive the defendant of a fair trial or a trial with a reliable result. Id.; State v. Washington, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 983.
The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight. State v. LaCaze, supra at 1078-1079. When assessing ineffective assistance claims, because there is no precise definition of reasonably effective assistance of counsel, these claims are assessed on the facts of the particular case as seen from the counsel's perspective at the time. Id. As a result, there is a strong presumption that the conduct of counsel will fall within the wide range of reasonable professional assistance. State v. LaCaze, supra at 1079.
Rather than on direct appeal, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Washington, supra at 983. However, when the record contains sufficient evidence to rule on the claim's merits and the issue is properly raised on appeal by assignment of error, it may be addressed in the interest of judicial economy. State v. McDonald, supra at 1042. In the present case, we find that the record is sufficient to rule on the merits of defendant's claim.
In State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118, the defendant argued he was denied effective assistance of counsel based on the introduction of inadmissible hearsay evidence and other crimes evidence without objection. After deciding that counsel's failure to object did not constitute deficient performance under the first prong of the Strickland test, this Court noted that, moreover, wrongful admission of other crimes evidence is subject to the harmless error analysis. Id. at 76-77. This Court decided in light of the other evidence presented, even if the testimony constituted other crimes evidence or hearsay, such admission was harmless and trial counsel was not ineffective for his failure to object. Id.
In the instant case, even if we find that counsel's failure to object to the admission of other crimes evidence constituted deficient performance, the record does not show that but for the failure to object to this evidence, the outcome of defendant's trial would have been different. Rather, we find that trial counsel's failure to object to the other crimes evidence was harmless. The State presented two witnesses, Brandon and Shirley, who testified that defendant was at the apartment at the time the victim was killed. Both positively identified defendant and claimed they knew him prior to the incident from the neighborhood. Further, both heard statements which amounted to evidence of a burglary or robbery. Moreover, in a statement to police, defendant himself admitted that he knew of the plan to rob the victim and chose to go to the apartment that night with two others he knew were armed.
Defendant's guilty verdict was surely unattributable to any error by defense counsel in failing to object to the admission of the other crimes evidence. Therefore, defendant has failed to demonstrate that he was prejudiced by counsel's failure to object and thus, he has not proven his claim of ineffective assistance of counsel. Accordingly, this assignment of error is without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P.art. 920: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error requiring corrective action was noted.
The trial court failed to advise defendant of the prescriptive period for filing *567 an application for post-conviction relief as required by LSA-C.Cr.P. art. 930.8, which provides that a court shall not consider an application for post-conviction relief filed more than two years after the judgment of the conviction and sentence has become final. Therefore, we remand the case and order the trial court to send defendant written notice of the two-year prescriptive period for post-conviction relief within ten days of the rendition of this appellate opinion and to file written proof in the record that defendant received the notice. See State v. Lee, 03-901 (La.App. 5 Cir. 12/9/03), 864 So.2d 654, 661.[13]

DECREE
For the reasons set forth above, we affirm defendant's conviction and sentence. We remand and order the trial court to send defendant written notice of the prescriptive period for filing post-conviction relief within ten days of the rendition of this opinion.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Clayton Weaver was also charged with second degree murder in this indictment.
[2] Pursuant to the plea agreement, defendant would have received five to ten years imprisonment without the benefit of probation, parole, or suspension of sentence.
[3] On April 21, 2004, the charge was dismissed as to Sarah.
[4] See State v. Stirgus, 04-654 (La.10/1/04), 885 So.2d 511.
[5] The apartment belonged to Shirley's sister, Deshawn Johnson, who was working offshore that night.
[6] Shirley testified that before she went to the Detective Bureau, she told the police that the perpetrators were wearing masks, but she only said this because Sarah told her to do so.
[7] The record reveals that Peter Lewis was sometimes referred to as Dough Boy.
[8] The record reveals that Clayton Weaver was sometimes referred to as Red.
[9] Defendant's brief also contains testimony at trial which made reference to other crimes evidence as well; however, such testimony was not included in defendant's motion for new trial and was not argued at the hearing on the motion.
[10] The exhibit which is the subject of this challenge is actually State's Exhibit 82.
[11] See State v. Stirgus, 04-654 (La.10/1/04), 885 So.2d 511.
[12] LSA-C.Cr.P. art. 851 provides:

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
[13] Defendant was given a proper post-conviction relief advisal at the time of his guilty plea; however, this guilty plea was vacated and the transcript does not reflect that defendant was re-advised.