STEPHEN J. WINDHORST, Judge.
[¡¡Defendant was convicted of one count of possession with intent to distribute heroin in violation of La. R.S. 40:966A and one count of possession without a prescription of a legend drug, Tramadol, in violation of La. R.S. 40:1238.1. He was sentenced to 50 years at hard labor, the first five years without benefit of probation or suspension of sentence, on Count one and five years at hard labor on Count two, to be served concurrently. After adjudication as a second felony offender, his sentence on Count one was vacated and he was resentenced to fifty years at hard labor without benefit of probation or suspension of sentence, concurrent with his original five year sentence on Count two. In this appeal, defendant’s counsel assigns as error the trial court’s denial of his motion to suppress evidence and the trial court’s grant of the State’s motion to introduce other crimes evidence. In addition, defendant has filed a pro se brief in which he argues that the evidence was insufficient to support his conviction and that his trial counsel was ineffective. For the reasons that follow, we affirm defendant’s convictions and sentences.
I ¿FACTS
Detective Curt Johnson, of the Plaque-mines Parish Sheriffs Office, testified that he was assigned to the Westbank Major Crimes Taskforce at the time of the instant offense. Detective Johnson testified that on April 18, 2012, he was investigating defendant for possible drug violations.[1] Pursuant to his investigation, Detective Johnson obtained a search warrant for defendant’s Infiniti SUV and his house located at 2108 Mesa Via Drive in Harvey. Detective Johnson executed the search warrants with Detective Ashton Gibbs, Sergeant Scott Zemlik, Detective David Biondolillo, and Detective Steve Arnold. Upon entering the house, defendant and his girlfriend, Ashley Ortiz, were found in an upstairs bedroom of the house. Defendant and Ms. Ortiz were detained and read their Miranda[2] rights while a search of the house was performed. Inside a coffee mug in the kitchen cabinet, the officers found a clear plastic bag containing approximately 2.7 grams of a light brown powdery substance, which field tested posi *319 tive for heroin.[3] They also found a container of Inositol powder used to “cut down narcotics to make it more abundant, so it’s more profitable.” In the entertainment room of the house, Detective Johnson seized a metal grinder and digital scale.[4] Detective Johnson determined this evidence to be of value in the weighing and repackaging of narcotics for sale. In a shed located in the backyard of the house, the officers recovered paraphernalia associated with narcotics use, including a used syringe, a paper towel, and a charred spoon. Further, upon searching defendant’s SUV,[5] ^Detective Johnson seized a prescription pill bottle for Hydrocodone in defendant’s name, however, upon further inspection, the contents were later verified to be Tramadol, a controlled dangerous substance.[6] After seizing this evidence, Detective Johnson spoke to defendant who explained that his brother had recently passed away, and that he took the heroin, which he referenced as rat poison, from his brother’s house and was selling it to supplement his income.[7]
Knowing defendant to have “handled a lot more narcotics,” Detective Johnson testified that he did not believe they were able to locate his “main supply” during the search of defendant’s house. As part of the continuing investigation, Detective Johnson began monitoring defendant’s jail phone conversations beginning from the time defendant was arrested on April 18, 2012, until May 1, 2012.[8] During that time defendant, also known by the nickname “Dukey,” made several phone calls to a person nicknamed “Veedoe,” later identified as Joseph Williams. Detective Johnson testified that on May 1, 2012, defendant called Williams and instructed him to “get a shovel to go pick up the dog sh* * ” from his backyard. On the phone, defendant is heard telling Williams that “it is a foot before you get to the banana tree and a foot before the gate ... on the same side as the banana tree ... they’ve got two of them down there ... you got both of them? ... the ones with the rice? ... one of them should be down there good.... ” Williams replied that he found both of them, and then stated there is “nothing but sh* * around the yard.” Believing the code words used by defendant were in reference to narcotics buried in defendant’s backyard, Detective Johnson sent Sergeant Scott Zemlik back to defendant’s residence to corroborate this | ^information. Next to a fence in the backyard, Sergeant Zemlik observed two freshly dug holes underneath the banana tree.[9] Detective *320 Johnson further stated that when they originally executed the search warrant, he did not observe any freshly dug holes, or patches of dirt, underneath the tree.
On the same day, Williams’ vehicle was located at the La Quinta Inn in Metairie. Once it was discovered that Williams had checked into the La Quinta Inn, a search warrant for Williams’ room was obtained. Present inside the motel room were Williams and Tammy Pattan. Detective Johnson testified that when they entered the motel room, Williams stated “You got me, the drugs are in the drawer.” Upon executing the search warrant, a mason jar containing “two clear plastic bags of compressed brown powder, with rice inside of it,” was recovered.[10] Williams’ cell phone was also recovered in the room. A review of the cell phone’s call log revealed a match to the number defendant called from the jail. Marcelle Folse, an expert in the field of forensic drug analysis and identification, testified that she analyzed the two bags containing the tan powder found in the La Quinta motel room. The net weight of the contents of both bags was 115 grams. The contents of the bags tested positive for heroin.
Lieutenant Donald Meunier, of the Jefferson Parish Sheriffs Office, testified as an expert in the field of narcotics distribution, packaging, and investigation. Lieutenant Meunier testified that he reviewed the police reports and ^physical evidence in this case. He noted that the Inositol powder found inside defendant’s residence is often used as a cutting agent to increase the volume of a drug. Lieutenant Meunier noted that if a person possessed four ounces (112 grams) of heroin, they would likely add a cutting agent to the product to increase the volume and sell it by the ounce. He explained that an ounce of heroin is typically sold for three thousand dollars. Lieutenant Meunier testified that it is common to find narcotics packaged with rice because it keeps moisture away from the drug. Also, in Lieutenant Meunier’s experience, he stated that it is common for narcotics dealers to use code words when speaking about exchanging drugs. With respect to the heroin found in the La Quinta motel room, Lieutenant Meunier testified that the heroin was packaged in typical fashion inside plastic bags. Lieutenant Meunier further noted that the heroin found inside defendant’s residence, which had a gross weight of approximately two grams, could be cut down to 20 doses and sold for ten dollars each. He indicated that this amount would be a large quantity of heroin for a user. Additionally, Lieutenant Meunier noted that the two bags of heroin found in the motel room *321 contained over four ounces of heroin, a quantity that would not be consistent with personal use, and a quantity that could be sold for $11,500 if sold as single doses.
Ashley Ortiz, defendant’s girlfriend, testified that she was living with defendant at the time the police searched his house on April 18, 2012. Ms. Ortiz testified that she never knew defendant to deal drugs.[11] She further stated that she was not aware of any “substance” in the kitchen cabinets, and that defendant does not own a black Infiniti SUV.
I ¡¿DISCUSSION
In his counseled brief, defendant argues that it was error for the trial court to allow the introduction of other crimes evidence during the cross examination of the defense witness, and also that the trial court erred in allowing the introduction of 115 grams of heroin, seized almost two weeks after defendant was incarcerated, from in a location with which the defendant had no connection.
Defendant also filed a pro se brief in which he argues that the evidence was insufficient to support his conviction. He further contends that his trial counsel was ineffective.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Le, 13-314 (La.App. 5 Cir. 12/12/13), 131 So.3d 306, 312.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the standard is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. Rather, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.; Jackson, 443 U.S. at 319, 99 S.Ct. 2781; See also |nState v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writs denied, 03-2745 (La.2/13/04), 867 So.2d 688 and OS-1951 (La.1/30/09), 999 So.2d 750.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to *322 reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. This is not a separate test from the Jackson standard but rather provides a helpful basis for determining the existence of reasonable doubt. Id. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Wooten, 738 So.2d at 675.
Defendant contends that the evidence was insufficient to support his conviction for possession with intent to distribute heroin, in violation of La. R.S. 40:966A. To prove this offense, the State was required to show defendant knowingly and intentionally possessed heroin, and that he did so with the specific 110intent to distribute it. See State v. Jones, 11-8 (La.App. 5 Cir. 11/15/11), 78 So.3d 274, 279, writ denied, 11-2781 (La.4/13/12), 85 So.3d 1246; State v. Collins, 09-283 (La.App. 5 Cir. 12/8/09), 30 So.3d 72, 77, writ denied, 10-0034 (La.9/3/10), 44 So.3d 696.
The first element includes both actual and constructive possession. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1331; State v. Williams, 98-1006, (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. A person who was not in physical possession of narcotics may have constructive possession when the drugs are under that person’s dominion or control. Williams, 735 So.2d at 69. The factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are: 1) the defendant’s knowledge that illegal drugs were in the area, 2) his relations with the person found to be in actual possession, 3) the defendant’s access to the area where the drugs were found, 4) evidence of recent drug use by the defendant, 5) the existence of paraphernalia, and 6) evidence that the area was frequented by drug users. Williams, 735 So.2d at 69.
In this case, on April 18, 2012, pursuant to a search warrant, detectives seized approximately two grams of heroin contained in a plastic bag located inside a coffee mug in defendant’s kitchen along with Inositol powder, a metal grinder, and a digital scale. Upon finding the narcotics and paraphernalia, defendant was questioned and admitted to selling heroin to supplement his income. Defendant’s admission, coupled with his proximity to the narcotics found in the common areas of his home, is sufficient to satisfy the possession element of the charged offense.
After the search of defendant’s residence was concluded, defendant was arrested and transported to jail. Detective Johnson testified that because he knew that defendant had “handled a lot more narcotics,” defendant’s jail phone ^^conversations were monitored in attempt to locate defendant’s “main supply.” During one of the phone calls initiated by defendant, he was heard using code words to instruct Joseph Williams to dig up two containers of narcotics buried near a banana tree in defendant’s backyard. Sergeant Zemlik was sent to defendant’s residence to corroborate this information, and upon arrival, observed two freshly dug holes underneath the banana tree in the backyard, which were not present when the initial search of defendant’s residence was performed. That same day, Williams was located in a motel room at the La *323 Quinta Inn and found to be in possession of two mason jars containing two plastic bags filled with 115 grams of heroin and $690.00 in cash. A review of Williams’ cell phone call log confirmed that defendant had called him from jail earlier that day.
Based on the testimony presented at trial and the factors discussed in Williams, we find that the State produced sufficient evidence to show that defendant constructively possessed the drugs found in his home and in the La Quinta Inn motel room.
The next essential element of the crime is intent to distribute. La. R.S. 14:10 defines specific criminal intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. The intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute. State v. White, 98-91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 717, writ denied, 98-2043 (La.11/25/98), 729 So.2d 577. Factors which may give rise to a reasonable inference that a defendant had the specific intent to distribute include 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expért or other |12testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. White, 715 So.2d at 717. By describing the factors as useful, the Louisiana Supreme Court does not require that the evidence fall squarely within those listed factors to be sufficient for the jury to find the requisite intent to distribute. State v. Mosley, 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 711, writ denied, 09-1316 (La.3/5/10), 28 So.3d 1002.
In this case, we find the State provided sufficient evidence to show that defendant intended to distribute heroin based on the factors discussed in White. In addition to the two grams of heroin seized from defendant’s residence, detectives seized Inositol powder, a metal grinder, and a digital scale from inside defendant’s home. Lieutenant Meunier, an expert in the field of narcotics distribution, packaging, and investigation, testified that this evidence is consistent with drug distribution. Specifically, Lieutenant Meunier testified that the Inositol powder found inside defendant’s residence is often used as a cutting agent to increase the volume of a drug. He explained that the quantity of heroin recovered from defendant’s residence contained twenty doses of heroin, which typically sell for ten dollars per dose. Noting that heroin users do not “stockpile” drugs, Lieutenant Meunier testified that the amount of heroin found inside defendant’s residence would be “a large quantity for a heroin user.” Additionally, as previously noted, after seizing this evidence, defendant admitted to Detective Johnson that he was selling heroin to supplement his income.
With respect to the heroin found in the La Quinta motel room, Lieutenant Meunier testified that the heroin was packaged in typical fashion inside plastic bags. Lieutenant Meunier noted that the two bags of heroin found in the motel room contained over four ounces of heroin, a quantity that would not be consistent | lswith personal use, and a quantity that could be sold for a minimum of $11,500 if sold as single doses. Additionally, the State introduced evidence that defendant had previously been convicted of possession with intent to distribute marijuana. See Hearold, 603 So.2d at 731 (La.1992) *324 (the combination of prior drug distribution and the amount of drugs found in the bag was sufficient evidence to convict defendant of possession with intent to distribute.)
Based on the foregoing we find that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that the evidence was sufficient under the Jackson standard to support defendant’s conviction for possession with intent to distribute heroin.
In his first counseled assignment of error, defendant argues that the trial court erred in allowing the State to introduce inadmissible other crimes evidence, when it allowed cross-examination of defense witness Ashley Ortiz, regarding defendant’s prior conviction for possession with intent to distribute marijuana.
During direct examination of Ms. Ortiz, defense counsel asked her whether she had made any statements to the police after the search of defendant’s home. Ms. Ortiz stated, “No, I was just questioned about Mr. Samuel’s dealings’ and they asked me things about what he did. And to my knowledge, I never knew him to deal drugs or anything like that ...” During cross-examination, the State introduced defendant’s prior conviction as impeachment evidence, after the Court ruled that defendant had “opened the door” during its direct examination of Ms. Ortiz. Defendant contends that he did not “open the door” to the use of his prior conviction on cross-examination of Ms. Ortiz because she did not testify to any character evidence on direct examination.
At a motion hearing held the day before trial, the trial court granted the State’s oral motion to use his prior conviction. The Louisiana Supreme Court has [ Mrecognized that evidence of other drug sales is of great probative value in establishing intent to distribute when it is an essential element of the crime charged. State v. Knighten, 07-1061 (La.11/16/07), 968 So.2d 720; State v. Grey, 408 So.2d 1239 (La.1982). Evidence of defendant’s prior conviction for possession with intent to distribute narcotics is an exception to the general prohibition against evidence of other crimes. State v. Jackson, 05-923 (La.App. 5 Cir. 3/28/09), 926 So.2d 72, writ denied, 06-1589 (La.1/8/07), 948 So.2d 121.
Furthermore, the trial court did not err in ruling that defendant opened the door to inclusion of this admissible evidence when questioning Ms. Ortiz. In State v. Mosley, 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 715, writ denied, 09-1316 (La.3/5/10), 28 So.3d 1002, this court said that
A witness may be cross-examined on any matter relevant to any issue in the case. La.C.E. art. 611. Article 404 of the Louisiana Code of Evidence generally disallows the admission of evidence of a person’s character or a trait of his character for the purpose of proving he acted in conformity therewith on a particular occasion. However, as a limited exception to the general rule, Article 404(A)(1) allows admission of evidence of a pertinent trait of a defendant’s character — such as a moral quality — offered by an accused, or by the prosecution to rebut the character evidence. Under La.C.E. art. 405(A), a character witness may be cross-examined regarding relevant specific instances of conduct.
In Mosley, during direct examination by defense counsel, the defense witness testified that she had never known the defendant to sell narcotics. The State contended that as a result of defense counsel’s questioning, the defense had opened the door regarding defendant’s prior drug convictions. On appeal, this court agreed, *325 finding that by questioning the witness regarding whether she knew the defendant to be a drug dealer, defense counsel had opened the door to rebuttal questioning by the State and, therefore, the State’s questions were proper. See also State v. Collins, 09-283 (La.App. 5 Cir. 12/8/09), 30 So.3d 72, writ denied, 10-0034 (La.9/3/10), 44 So.3d 696. When a defendant opens the door to such |1fievidence, Prieur[12] notice is not required. State v. Marcotte, 01-1586 (La.App. 3 Cir. 5/15/02), 817 So.2d 1245, writ denied, 02-1687 (La.2/7/03), 836 So.2d 96.
We find no merit to this assignment of error.
In his second counseled assignment of error, defendant argues the trial court erred when it allowed the State to introduce inadmissible other crimes evidence at trial regarding the 115 grams of heroin seized at the La Quinta Inn more than two weeks after defendant’s arrest. Defendant maintains the State introduced this other crimes evidence as a subterfuge for introducing evidence to depict defendant’s bad character. He further contends that none of the relevant “404B exceptions” for introducing this other crimes evidence apply. The State maintains that the evidence recovered in the motel room was relevant and admissible proof of a continuous chain of events related to the charged crime.
Generally, evidence of “other crimes,” or bad acts committed by a criminal defendant, is inadmissible at trial due to the risk of grave prejudice to the defendant. La. C.E. art. 404 B(l); State v. Prieur, 277 So.2d at 128; State v. Williams, 01-1007 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1030, writ denied, 08-2070 (La.1/30/09), 999 So.2d 751. However, evidence of “other crimes” may be introduced if it is independently relevant or when it relates to conduct, formerly referred to as res gestae, that “constitutes an integral part of the act or transaction that is the subject of the present proceeding.” La. C.E. art. 404 B(1). Res gestae events constituting “other crimes” are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. State v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, 741, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036,157 L.Ed.2d 886 (2004).
11fiThe res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime, if a continuous chain of events is evident under the circumstances. Taylor, 838 So.2d at 741. The res gestae doctrine is designed to allow the story of the crime to be told in its entirety, by proving its immediate context of happenings in time and place. Taylor, 838 So.2d at 742. Furthermore, the State is not required to provide the defendant with notice before introducing res gestae evidence. See La. C.Cr.P. art. 720; State v. Ridgley, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, 697, writ denied, 09-0374 (La.11/6/09), 21 So.3d 301. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art. 404 B(l) will not be disturbed. State v. Merritt, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228.
Here, the heroin evidence seized from the La Quinta Inn on May 1, 2012, forms an “integral part of the act or transaction that is the subject of the pres *326 ent proceeding.” Although the evidence seized from the motel room was recovered after defendant’s arrest, this evidence was part of a continuous chain of events, and is admissible and relevant to prove the crime charged in the instant case, namely, defendant’s intent to distribute. As a general rule, evidence of criminal conduct that takes place in a series of events is admissible at the trial of one of the offenses. See La. C.E. art. 404B. See also State v. Morris, 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 914, writ denied, 00-3293 (La.10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
|17We find no abuse of discretion by the trial court in allowing the introduction of the heroin seized from Joseph Williams’ hotel room. This assignment of error is without merit.
In his second pro se assignment of error, defendant contends his counsel was ineffective when he failed to subpoena Joseph Williams to testify at trial, failed to file a written motion to obtain a recess to secure the presence of Williams, failed “to investigate,” and failed to properly prepare a defense. Defendant further submits that his attorney was deficient for failing to file a motion to exclude the heroin evidence seized from the La Quinta motel room.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039,1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1248, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
|1RIn the present case, we find that the appellate record is insufficient to consider all defendants’ allegations of ineffective assistance of counsel. Defendant’s claims of ineffective counsel encompass decisions relating to investigation, preparation, and strategy, which require an evidentiary hearing and cannot possibly be decided on appeal. See State v. Martin, 607 So.2d 775, 788 (La.App. 1 Cir.1992).
ERRORS PATENT
We have reviewed the record for errors patent according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find none which merit corrective action.
CONCLUSION
In accordance with the foregoing, we affirm the defendant’s convictions and sentences.
AFFIRMED.

. This investigation was initiated through the use of a confidential informant.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Raven Barrois, an expert in the field of forensic identification and analysis of narcotics, testified that the powder recovered from defendant’s residence tested positive for heroin and weighed two grams.

. There was no evidence of heroin present on the scale or grinder.

. A lien notice on the Infiniti SUV, believed to belong to defendant, was also found inside the house. On the paperwork was the name Veronica Lewis, with the address listed as 2108 Mesa Via. Detective Johnson noted that throughout his investigation he observed defendant driving the Infiniti SUV vehicle on a daily basis.

. The address listed on the pill bottle was 2108 Mesa Via.

. Detective Ashton Gibbs, of the Gretna Police Department, corroborated that defendant made this statement.

. Deputy Christopher Rivers, custodian of records for the Jefferson Parish Correctional Center, authenticated the phone records detailing the outgoing calls made by defendant while in jail.

. Sergeant Scott Zemlik, of the Gretna Police Department, Major Crimes Taskforce, confirmed that he aided in the search of defendant's residence on April 18, 2012. Sergeant Zemlik further testified that on May 1, 2012, *320 he went back to defendant's residence in an attempt to corroborate information that was obtained from phone calls made by defendant while in jail. While at the residence, Sergeant Zemlik took a photograph of the backyard, which revealed "two freshly dug holes, on the side of a banana tree.” According to Sergeant Zemlik, only half of the yard had been mowed. He believed this to be significant because during one of the phone calls "you can hear — it sounds like they’re mowing the lawn, they’re doing the digging, they find the — which was later found to be the heroin; and then they stopped, and dropped. That was their mission, to dig it up and go.”

. Detective David Biondolillo, of the Jefferson Parish Sheriff's Office, testified that he participated in the search of the La Quinta motel room and that in the room he seized a glass mason jar containing rice and a tan powder substance that tested positive for heroin. Detective Biondolillo further stated that it is common for rice to be packaged with heroin because rice is commonly used to "keep the moisture off the powder so it won't harden up.” Detective Biondolillo stated that there did not appear to be any dirt on the mason jar. He also testified that approximately six hundred dollars was found on a table in the motel room.

. She testified on cross-examination that she was aware defendant was on probation. She believed he was on probation for smoking marijuana and was unaware that he was on probation for possession with intent to distribute marijuana.

. State v. Prieur, 277 So.2d 126 (La.1973).